## FIRST STATE BANK OF SLATON v. MILLER.  (No. 2572.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 16, 1925.)

**Bills and notes ⬥525—Evidence held to sustain finding that plaintiff did not purchase notes in good faith and for valuable consideration.**

Evidence *held* to sustain finding of jury that plaintiff did not purchase notes sued on in good faith and for a valuable consideration and without notice of defenses thereto.

Appeal from District Court, Lubbock County; Clark M. Mullican, Judge.

Action by the First State Bank of Slaton against H. F. Miller, in which defendant by answer and cross-petition made H. G. Whitehead and another parties. From an adverse judgment, the bank appeals. Affirmed.

Pearce Stewart & Triplett, of Lubbock and D. E. Kemp, of Slaton, for appellant.

R. A. Baldwin, of Slaton, for appellee.

HALL, C. J. The appellant, bank, sued H. F. Miller on two vendor's lien notes dated January 4, 1923, executed in the sum of $850 each, and payable January 4, 1925, to the order of O. A. Louallen. The notes provide for interest at 8 per cent. from date, payable semiannually, and 10 per cent. attorney's fees.

The bank alleged that the notes were given in part payment for certain land situated in Winkler county; that, at the time of their execution, Louallen executed and delivered a warranty deed to H. F. Miller, in which was retained a vendor's lien to secure the payment of the notes; that both the notes and deed contained the usual accelera-

tion clause, and that, under the provision of said clause, because of the failure to pay the interest and principal of the first note, both notes had been declared due.

The appellee, Miller, answered, and by cross-action made H. G. Whitehead and O. A. Louallen parties defendant. He pleaded numerous matters of fraud against the cross-defendants, and alleged that, by reason of their fraudulent representations he had been induced to purchase the land and execute the notes; that said cross-defendants contracted to furnish him an abstract of title to the land showing good and merchantable title in Louallen, and in all respects had breached said contract; that Louallen was payee in the notes; that the notes were never delivered to him nor to any one authorized to receive them for him; that the bank did not acquire the notes from the payee; that it had paid no consideration for said notes; that it had in fact received them from H. G. Whitehead unindorsed and without requiring him to indorse them; that thereafter the bank obtained a transfer of the notes from the payee, Louallen, without any consideration whatever, and had never recorded said transfer; that the notes were executed without consideration, and transferred to appellant, bank, without consideration; that the bank had actual and constructive notice of the fraud and infirmity in said notes at and prior to the time it required them; that it had such knowledge of the defects and infirmities in the inception and title to the notes; that it was in duty bound to make inquiry and investigation; that it did not acquire the notes in good faith for value in due course, and is not a bona fide holder thereof; that, prior to the time the bank acquired the notes, the appellee informed it that he suspected he had been defrauded; that he was suspicious of the transaction; that the impleaded defendants had breached their contract and would not furnish him an abstract of title; that he was investigating the matter, and warned the president of appellant, bank, to investigate it, and that said president promised to investigate before purchasing the notes, and later assured appellee he had investigated the matter, that the land was all right and the deal was on the square, and thereby lulled appellee into a sense of security, preventing investigation by appellee; that later appellee learned that the representations of the said president of the bank were false and fraudulent.

The case was submitted to the jury upon special issues. The findings are as follows:

(1) The plaintiff, the First State Bank of Slaton, acting by and through its president and agent, J. H. Brewer, did not purchase the notes sued on in this case in good faith and for a valuable consideration.

(3) We find from the evidence in this case that H. G. Whitehead made the representations charged against him by the defendant Miller in his amended answer, filed in this case, relative to the sale to Miller of the Winkler county land.

(4) The defendant Whitehead was guilty of fraud in making such representations to Miller.

(5) Said representations were knowingly and illegally made by Whitehead.

(6) Whitehead did not inform Miller at any time prior to the delivery of the deed that he had never been upon the particular land in controversy.

Judgment was entered against the bank in accordance with these findings.

The case is presented here upon the single proposition that a party purchasing a vendor's lien note, in good faith before maturity, and for valuable consideration, and without notice of any defenses thereto, is "an innocent purchaser and entitled to enforce his rights thereunto."

Even if we admit that the proposition is sound, as stating an abstract principle of law, nevertheless the judgment must be affirmed, because the findings of the jury are supported by an overwhelming weight of testimony.

The appellee objects to the consideration of appellant's brief, because it violates practically every fundamental rule of briefing. While the objections are well taken, we have decided to consider the brief in its defective form.

Appellant asserts that the undisputed testimony was that plaintiff purchased the notes in controversy before maturity thereof, and purchased them in good faith and in due course of business and paid a valuable consideration therefor, and we are invited to read a statement of facts of eighty-four pages in proof of said statement. There is no reference in the brief anywhere to any page of the statement of facts, or to the testimony of any particular witness, which would support the proposition. However, appellee has quoted at great length from the statement of facts, and we have referred to the statement itself, and are driven to the conclusion that the entire transaction was fraudulent; that the bank had full notice of the fraud and became a party to it. Louallen, the payee in the notes, testified that they were never delivered to him; that he never had his hands on them and never sold them; that he did execute a written transfer of the notes to the bank which he acknowledged, but never knew who paid for the acknowledgment; that he did not know who wrote the transfer, and nothing was paid him for executing it; that he indorsed the notes about two weeks after executing the transfer, and indorsed them without consideration and without recourse; that he did not know the president of the bank, never had any dealings with the bank, or any other person representing it; that he never sold the notes to Whitehead nor any one else;

that he never talked to Whitehead about any notes or anything.

Whitehead testified that he did not indorse the notes, did not get them from the payee, Louallen, and that they never went into Louallen's hands; that he told Brewer that he had never seen the land, and that he did not know anything about it, except in a general way; that Brewer told him that he would investigate them; that he did not have any transfer of the notes at the time he talked to Brewer; that Brewer spent several days investigating the notes, and said he would look into them, and later told him he would take them.

Brewer testified, in part, that the notes were originally made payable to Ovid Louallen, and that he later changed them, making them payable to O. A. Louallen; that he wrote the transfer in the bank, and told Whitehead he would investigate the notes; that it first got the notes in May, and closed the deal for them on June 6th; that the notes were payable to Ovid Louallen when he got them; that he did not require Whitehead to indorse them; that he did not know anything about the land, had never been in that part of the country, and all he knew was that they were vendor's lien notes. He admitted that he did not pay Louallen anything for the transfer, nor anything for the notes; that he did not know anything about the security nor about the land nor the title to it; that Whitehead did not tell him that Louallen was just a mechanic working in a garage down at Tahoka; that he did not ask anything about Louallen; that the notes had been indorsed without recourse.

The testimony of Miller and wife is clear and uncontradicted as to the fraudulent representations, and that they warned Brewer before he acquired the notes for the bank that the whole transaction was fraudulent.

The sheriff of Winkler county testified that the land for which the notes were given was worthless for either agricultural or grazing purposes; that it was almost destitute of any vegetation except a little shinnery brush; that Whitehead gave A. M. Sullivan $25 to pay Louallen to induce him to pose as owner and seller of the land to Miller.

Louallen testified that he never purchased the land, nor did he ever make any payment for it. The abstract shows that J. F. Sumner conveyed the land to Louallen, and that he never owned it and never had a deed to it. Louallen testified that he never had any transaction whatever with Sumner, and that he got $25 for making the deed to Miller.

The proof of fraud and deceit is so clear and uncontradicted that we deem it unnecessary to enter into a discussion of the legal propositions advanced in appellee's excellent brief.

The judgment is affirmed.